## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JAMES R. ROBINSON,** *et al.,* | * | |
| *Plaintiffs,* | * | |
| v. | * | |
| | * | Case No. 1:13-CV-02234-RDB |
| **MARYLAND DEPARTMENT OF THE ENVIRONMENT,** *et al.,* | * | |
| *Defendants.* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MARYLAND DEPARTMENT OF THE ENVIRONMENT'S
### RESPONSE TO AFFIDAVIT OF DR. JAN KOOL

The Maryland Department of the Environment ("MDE" or the "Department")
provides the information set forth in the accompanying affidavits.  For the Court's
convenience, the substance of these affidavits is summarized below.

### FACTS

The motion filed by the plaintiffs, James Robinson, *et al.,* seeks to enjoin CBAC
Gaming and Whiting-Turner Contracting from continuing construction of the Horseshoe
Casino at a site in Baltimore City.  The site is being developed pursuant to a Response
Action Plan ("RAP") approved by the Maryland Department of the Environment under
the Voluntary Cleanup Program it administers.  Though MDE is not named as a
respondent in the motion, the underlying lawsuit does seek injunctive relief against MDE;
the complaint purports to seek a temporary restraining order and a preliminary injunction,
as well as a permanent injunction.  The lawsuit, the motion and its supporting affidavit

amount to a broad attack against MDE, including unsupported allegations of intentional wrongdoing in approving the RAP.  Thus, though the pending motion is not expressly directed at MDE, the Department believes it is appropriate that it respond to plaintiffs' motion for injunctive relief and their legally-unsupportable and scientifically-baseless allegations that MDE has approved a RAP that allows contamination to spread throughout the surrounding neighborhood by traveling through the groundwater to other properties and into the Middle Branch of the Patapsco River.

> **A.     Among the Multiple Regulatory Schemes Addressing Environmental Concerns, the Voluntary Cleanup Program Offers the Appropriate Means of Addressing Issues at the Gateway South and Warner Street Properties.**

The Maryland Voluntary Cleanup Program is governed by a statute codified at §§ 7-501 to 7-516 of the Environment Article.  The Voluntary Cleanup Program ("VCP") is not an all-purpose cleanup tool, intended to remove every environmental problem at every contaminated site.  Instead, the VCP works in conjunction with other programs and agencies to protect human health and the environment, while at the same time allowing redevelopment of a particular class of sites, many of them in blighted urban neighborhoods.  These sites are either known to be contaminated, or perceived to be contaminated, which hinders their reuse.   Such sites are commonly known as "Brownfields" sites, and receive that designation only after they are investigated and assessed, generally by MDE or the federal Environmental Protection Agency ("EPA"), or both.  The site in question is a Brownfields site, as are many others in the general area.  More seriously contaminated sites that require more aggressive and immediate action are

*not* designated Brownfields sites, and thus are ineligible for participation in Maryland's VCP.

In addition to the VCP, there are numerous other regulatory tools available to State and federal officials, including the Comprehensive Environmental Responses, Compensation, and Liability Act, 42 U.S.C.§§ 9601-9675 ("CERCLA"), the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901-6992k ("RCRA"), and the Clean Water Act, 33 U.S.C. §§ 1251-1387, the State Hazardous Waste Program, *see* /www.mde.state.md.us/programs/Land/HazardousWaste/Hazardous WasteHome/Pages/programs/landprograms/hazardous_waste/home/index.aspx (last visited Aug. 8, 2013), State Water Pollution Control laws, and various permitting schemes. Any of these may be brought to bear as needed at any given site, but more importantly, they are used together to broadly address the overall problems presented by typical urban environments degraded by centuries of industrial contamination. There are innumerable sources of contamination contributing to the degraded water quality of Baltimore Harbor and the Middle Branch of the Patapsco River. MDE is engaged, along with EPA and other stakeholders, in taking a global approach to the problem, seeking to improve water quality in the entire watershed. MDE is using all of the resources available in that effort, considering each site individually, and selecting the appropriate tools to address the specific problem at hand.

At the Gateway South Phase I Properties and Warner Street Properties, collectively the "Site," the VCP is the appropriate mechanism to ensure a proper cleanup,

and the work done at the Site pursuant to the requirements of the VCP has correctly characterized the nature and extent of the contamination, evaluated the risk to human health and the environment, and taken the proper steps to eliminate those risks.

**B.      The Site and Its Surroundings Have Been Extensively Evaluated.**

As part of its work, MDE performs both human health risk assessments and ecological risk assessments to help determine the need for response action at sites.  MDE Toxicologist Mark Mank has conducted multiple risk assessments of the Site in question as well as surrounding properties.  *See* Mank Affidavit Exhibit C at para. 5.  In general terms, it is Mr. Mank's responsibility to consider all of the data from all of the samples at a given site, measure the contamination against the guidelines set forth in MDE's Cleanup Standards for Soil and Groundwater, and determine the proper environmental response to eliminate risk to human health and the environment.  Mr. Mank is the author of the MDE Cleanup Standards for Soil and Groundwater and its periodic updates, and he has conducted such risk assessments for the last thirteen years.

**C.      The RAP Addresses All of the Risks Identified in the Risk Assessments.**

The risk assessments are used to guide MDE's evaluations of proposed RAPs.  If the RAP does not address the risks identified, it will not be approved.  In this case, the risk assessment identified the need for environmental response to address soil exposure, groundwater contact and vapor intrusion.  The RAP being implemented in this case requires action to address all of these concerns, including removing soil contaminated by arsenic and petroleum products, capping to eliminate contact with soil and groundwater,

4

and reducing volatile organic compound ("VOC") sources by actively remediating soil gas. These activities are currently underway.  Richelle Hanson Affidavit, Exhibit A.

**D.     There Is No Evidence that Contamination from the Site Is Impacting the Plaintiffs, the Park or the River.**

As part of the risk assessment for the subject site, and also pursuant to a separate risk assessment conducted on the Warner Street Wetlands located between the site and the Middle Branch, and additional shoreline samples collected as recently as the Spring of 2013 (Mank Affidavit, Exhibit C), Mr. Mank concluded that there are no contaminants migrating from the Site, through the Warner Street Wetlands and into the River.  The Warner Street Wetland parcel does contain its own disperse sources of contamination, which likely resulted from historic filling and industrial activity on that site and are unrelated to historic contamination on the Gateway South Phase I and Warner Street Properties.

The plaintiffs express concern that their diet commonly includes fish caught from the Middle Branch, and they insist that construction must be immediately halted in order to be sure that contamination from the site does not impact the fish.  The Middle Branch of the Patapsco, indeed all of the Baltimore Harbor, is subject to a fish advisory alerting the public to contamination by PCBs.  Affidavit of John Backus, attached as Exhibit D. Mank Affidavit at para. 15.  However, there is no PCB contamination at the Site.  Mank Affidavit at para. 15.

Moreover, extensive investigation by Mr. Mank of the Site and neighboring sites, including the Waterfront parcels next to the River, has confirmed that no contamination

from the Site is reaching the River. Therefore, the plaintiffs' stated concern about eating fish from the Middle Branch is completely unrelated to any condition or activity at the Site.

### E.   Offsite Historic Contamination Is Addressed by Programs Outside the Voluntary Cleanup Program.

The plaintiffs' affiant, Dr. Kool, contends that the RAP should address assumed and potential off-site impacts, including conducting immediate offsite air sampling in structures not owned or controlled by the City or CBAC Gaming. The purported basis of Dr. Kool's concern is that VOCs spilled into the ground during industrial operations that occurred long ago may have migrated offsite and may now be wafting up and into neighboring buildings. By law, however, an inculpable person participating in the VCP, such as the City and CBAC Gaming, is not responsible for historic contamination that left the Site before the current owner or occupant took possession or control. Md. Code Ann., Environment §7-505(b). If such off-site historic contamination exists, it is the responsibility of the current off-site property owner or potentially the "Responsible Person" who owned the site at the time the contamination left the site. See Md. Code Ann., Environment § 7-201(u) for the applicable definition of "Responsible Person"). Under the VCP, neither the City nor CBAC Gaming, as inculpable persons, is responsible for investigating off-site contamination that it did not cause.

In the event that VCP staff determines that there may be historic off-site impact, the issue is generally referred to the Controlled Hazardous Substances ("CHS") Enforcement Section of MDE or the Oil Control Program ("OCP") to contact the

Responsible Person, depending on the potential nature of the off-site contaminants.  In this case, after evaluating the data and considering the options, the VCP determined that it was not necessary to refer any off-site property to the CHS Section or OCP.  See Affidavit of Richelle Hanson at par. 40-41.

The RAP approved by the VCP requires that the Participant, through a variety of options, eliminate pathways for on-site contamination to impact human health or the environment based on the environmental assessments and contamination identified during the application review process.  MDE's analysis of the data confirms that contamination is not currently leaving the Site in any significant amount.  Nor are temporary disturbances of the Site during construction expected to have an impact that would require additional controls to be added during construction.  If previously undiscovered contamination were found during construction, the Participant would be required to submit a RAP Amendment to deal with that contamination.  If current contamination were found to be leaving the site in amounts or concentrations that pose a threat to human health or the environment, MDE would work with the Participant or the RP, if appropriate, to reduce the source. For a detailed discussion of this issue, see the Affidavit of MDE toxicologist Mark Mank and Richelle Hanson attached as Exhibits A and C.

**F.     MDE Followed the Proper Process in Accepting and Approving the Applications Of Baltimore Development Corporation and CBAC Gaming.**

The Voluntary Cleanup Program's general purpose and process are described in detail in the Affidavit of James Carroll, Director of the VCP since October 2004. Exhibit B.   The process begins with an application, which must be accompanied by documentation of an investigation and assessment that satisfies the Department that either the site is not contaminated, or it is contaminated and the nature and extent of that contamination is known. Upon application, there is a public notice and comment period.

When the application process is complete, the VCP Project Manager accepts the application, and if cleanup is needed, the applicant submits a proposed RAP. The VCP comments on the proposal, considers revisions, and before accepting the RAP, provides a second notice and comment period, which includes a public information meeting. The Department then considers public comments, if any, makes any changes it deems necessary, and approves the RAP, which is then implemented under MDE supervision.

In this case, the process had already proceeded through the application of the Baltimore Development Corporation ("BDC") and approval of its RAP, including two notice and comment periods, and the application of CBAC Gaming, and approval of its RAP, when a group of plaintiffs filed suit in the Circuit Court for Baltimore City, alleging that they had been denied their rights to public notice and comment. *Sherrill v. Maryland Dept. Env.*, Md. Cir. Ct. 24-C-13-001000 (Baltimore City). The plaintiffs there attacked only the process of approval, not the substance of the RAP. They sought a

temporary restraining order, which was denied, in part based on the affidavit of the Project Manager Richelle Hanson.  Attached hereto as Exhibit A is an enlarged Affidavit of Richelle Hanson, the first numbered paragraphs of which describe the steps of the process in detail, and how MDE followed the same steps, in the same way that it has since the inception of the program, including a repeat of the notice and comment process at the request of the Secretary of the Department.  Significantly, no plaintiff in the current lawsuit asked a question, made a comment, or attended either public meeting.

There is no significant defect in the process MDE followed in approving the RAP, and if there were, the plaintiffs have not alleged or attempted to prove that they suffered any prejudice as a result of any such defect.

Respectfully submitted,

DOUGLAS F. GANSLER
Attorney General of Maryland


/s/  Matthew Zimmerman
MATTHEW ZIMMERMAN
Assistant Attorney General
Bar No. 01222
Maryland Dept. of the Environment
Office of the Attorney General
1800 Washington Boulevard, Suite 6048
Baltimore, Maryland 21230
(410) 537-3452
matthew.zimmerman@maryland.gov

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th of August, 2013, a copy of the Maryland Department of the Environment's Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunctive Relief, which was electronically filed in this case, was sent electronically to:

Anuj Sud
Sud Law Firm
7309 Baltimore Avenue, Suite 117
College Park, Maryland 20740

Walter W. Green
Law Office of Walter W. Green
7309 Baltimore Avenue, Suite 115
College Park, Maryland 20740

Kenneth L. Thompson
Mary Rosewin Sweeney
Thomas Mark Lingan
Venable LLP
750 E. Pratt Street
Suite 900
Baltimore, Maryland 21202
*Attorneys for CBAC Gaming, LLC*

Thomas C. Valkenet
Young and Valkenet LLC
600 Wyndhurst Avenue
Suite 230
Baltimore, Maryland 21210
*Attorney for Whiting-Turner Contracting Company*

Elizabeth B. Dawson
*Attorney for Environmental Protection Agency*

And was mailed via first class mail, postage prepaid, to:

Mayor and City Council of Baltimore
c/o George Nilson, Esquire
Baltimore City Law Department
100 N. Holliday Street, Suite 101
Baltimore, Maryland 21202

Baltimore Development Corporation
c/o Clayton J. Powell, Jr.
2537 St. Paul Street
Baltimore, Maryland 21218

Urban Green Environmental, LLC
c/o James H. West
409 Washington Avenue
Suite 1010
Towson, Maryland 21202

                    /s/  Matthew Zimmerman
                    Matthew Zimmerman

11