IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES R. ROBINSON, *et al.*,        *

    *Plaintiffs*,        *

v.        *

    Case No. 1:13-CV-02234-RDB

    *

MARYLAND DEPARTMENT OF
THE ENVIRONMENT, *et al.*,        *

    *Defendants*.        *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### AFFIDAVIT OF JAMES R. CARROLL

1. I am over the age of eighteen and competent to testify to the matters stated herein.

2. I am the Program Administrator of the Land Restoration Program, Land Management Administration, Maryland Department of the Environment, and have held this position since October 2004.

3. As Program Administrator for the Land Restoration Program, I am responsible for managing 36 professional and administrative employees in the Controlled Hazardous Substances Enforcement Division, Federal Facilities Division, and Voluntary Cleanup Programs. The LRP oversees the assessment and cleanup of hazardous substance sites throughout Maryland. I ensure that technical and administrative policies and procedures are developed and implemented consistently across LRP and with environmental regulatory programs in the Department.

4. I was the Community Redevelopment Coordinator for the Voluntary Cleanup Program from January 2004 to October 2004.


EXHIBIT B

5.     I was responsible for developing marketing strategy for educating businesses, developers, lenders, municipalities, community groups and other parties on the benefits of participating in Maryland's Voluntary Cleanup Program in my role as Community Redevelopment Coordinator.  I conducted outreach efforts included public presentations and workshops about the VCP and targeted Brownfield Assessment initiatives to public and private sector organizations, including state and local government officials, real estate developers, and the legal, financial and environmental service sectors.  I also provided technical assistance to parties seeking to clean-up and redevelop contaminated properties, including assistance in complying with the VCP and providing information on the liability relief and financial incentives provided Maryland's Brownfields Revitalization Incentive Program and other economic incentives. In addition, I assisted VCP participants in resolving issues both external and internal to the program.

6.     I am familiar with the Brownfield properties located in Baltimore's Carroll-Camden Industrial Area.  Baltimore has a rich industrial history that spans almost 300 years and typifies how many former industrial properties in Baltimore over the past century have evolved from industrial uses to commercial or residential land uses.  Yet this history also has created an environmental legacy that can affect current and future land uses.  The Carroll-Camden Industrial Area is one such area of Baltimore that has been impacted by these historic operations. The Horseshoe Casino property, situated in this 5,580-acre area, is not significantly different from other properties within the Carroll Camden district or other waterfront areas in Baltimore. Exhibit B-1 identifies Brownfield sites located throughout the Carroll Camden district and other Baltimore waterfront areas.

7.      Since the mid 1800's, industry was originally attracted to the Carroll Camden district of Baltimore because of the availability of water power from the Jones Falls, its location near a port, the presence of rail lines, and its proximity to the city's downtown area. Sanborn Fire Insurance maps show that a wide-variety of businesses operated in the area. These businesses include glassworks, metal foundries and ironworks, brickworks, engine shops, meat slaughter and packing houses, lumberyards, paint and varnish manufacturers, household products manufacturers, and scrap metal yards. The presence of these wide ranging industrial for more than a century implies that environmental contamination is likely to be present on many of these properties.

8.      The industrial history of the Horseshoe Casino property is well documented throughout the VCP records. The property adjoining the Horseshoe Casino, known as the Warner Street Wetlands, was the subject of several Brownfield assessments between 2004 and 2008. It is currently owned by Baltimore City and is part of Gwynns Falls Trail South. The historic records indicate varied industrial uses of the wetland properties dating back through the mid-19th century. The property has been used as a wharf in the mid-1800s. Sometime after 1890 and before 1915, coal bins owned by the Consumer Wood and Coal Company occupied the area bounded by the Middle Fork Patapsco River to the east, Oler (Dock) Street to the south, Shell (S. Eutaw) Street to the west and an extended southeastern line formed by the continuation of the northeastern side of Worcester Street (Lots 6, 7, and 8). No activities for this area were noted in the 1953 Sanborn Map. MDE has been working with Baltimore City to finalize a remedial strategy for this property.

9.      Many property owners and prospective purchasers in the VCP address site contamination by eliminating exposure pathways through engineering and land use controls in

the redevelopment process. The developers of the Horseshoe Casino are using engineering controls (vapor mitigation, source reduction, soil removal and capping) to eliminate exposure pathways whereby contaminants could contact people or environmental receptors. Other properties, such as the National Aquarium in Baltimore, have addressed contaminated waterfront property through the use of limited soil removal and capping.

10. I am familiar with the development of national Brownfield policies which began in the mid-1990s. The U.S. Environmental Protection Agency (EPA), state environmental regulatory agencies, the regulated community and the public recognized that environmental liability was impeding the redevelopment of properties where environmental contamination was known or suspected. To address this issue, EPA and the states began developing mechanisms for providing prospective purchasers with liability protection to encourage the redevelopment of impaired properties. One of these mechanisms was the advent of state voluntary cleanup programs.

11. I am familiar with Maryland's Brownfield program and the history of the VCP's enactment in 1997 as part of Maryland's SmartGrowth initiative. The purpose of the VCP is to encourage the investigation of eligible properties with known or perceived controlled hazardous substance contamination, protect public health and the environment, accelerate cleanup of properties, and provide liability releases and finality to site cleanup. Effective October 1, 2004, properties contaminated by oil are also eligible to participate in the program.

12. The VCP's purpose is to encourage responsible redevelopment that protects public health and the environment. To date, 753 applications for 744 properties representing approximately 15,364.24 acres have been received and 590 properties have been accepted into the program. Well over half of those properties are now completely through the Program. VCP

properties in urban, suburban and rural areas have been redeveloped and provide now economic benefits to both the immediate municipality as well as the State.

13.     Although the Department does not track direct economic benefits associated with the redevelopment, the anecdotal evidence is readily available.  For example, the $400 million Parole Towne Centre VCP redevelopment project in Annapolis has resulted in a 35- acre lifestyle center that includes 675,000 square feet of retail/dining/entertainment space, 115,000 square feet of office space, 300 condos and apartments, and a 200-room hotel.  This project won the nationally recognized Phoenix Award in 2009.

14.     The process of enrolling sites into the VCP is established by statute.  Persons wishing to apply to the Voluntary Cleanup Program must submit a completed application, a Phase I and Phase II environmental site assessment, a $6,000 application fee and any other information concerning the property that the department requires in order to evaluate the eligibility of the applicant and the property.

15.     The purpose of the VCP is to encourage redevelopment of properties that are contaminated or are perceived to be contaminated by hazardous substances or oil.  To that end, the statute defines eligible sites as (1) sites listed on the Comprehensive Environmental Response, Compensation and Liability System (CERCLIS); (2) sites listed on CERCLIS and designated No Further Remedial Action Planned (NFRAP) by the federal government; (3) oil-contaminated sites; and (4) sites under active enforcement by the Department of the Environment when the applicant is an inculpable person.  The statute also identifies those sites that are not eligible to participate in the VCP.  Sites defined as ineligible include (1) sites on the National Priorities List (the federal Superfund list); (2) sites subject to a State controlled hazardous

substance permit on currently operating facilities; and (3) sites contaminated after October 1, 1997, if owned by a responsible person.

16. After reviewing the complete application package, MDE can approve the application, deny the application, or determine that the site has no further requirements related to the investigation of controlled hazardous substances at the eligible property. The "no further requirements" decision does not prevent MDE from taking action against responsible persons for previously undiscovered contamination or imminent and substantial threats to public health or the environment. It also does not prevent MDE from taking action against any person for new or exacerbated contamination.

17. Following MDE approval of application, the participant develops a proposed response action plan, including a schedule for implementation and completion of the provisions of the plan. Upon submittal of the plan to MDE for approval, the public is given an opportunity to comment on the proposed remedial action plan or request a public informational meeting prior to approval.

18. A Certificate of Completion, which states that cleanup requirements have been met, is issued upon satisfactory completion of the provisions of the approval response action plan. The Certificate also includes certain liability assurances subject to "reopeners" or the setting aside of the Certificate for environmental or public health reasons.

I **SOLEMNLY AFFIRM** under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

August 8, 2013
Date

James R. Carroll
Program Administrator
Land Restoration Program
Land Management Administration
Maryland Department of the Environment

# EXHIBIT B-1

**Land Restoration Program (LRP) Sites in
Carroll Camden District / Baltimore Waterfront Areas**



Exhibit B-1: Land Restoration Program (LRP) Sites in Carroll Camden District / Baltimore Waterfront Areas

**Legend**
- Green triangle represents location of LRP Site.
- Purple polygon represents completed LRP Site.